UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

MELISSA PERRY,

    Plaintiff,

v.

NATIONAL ASSOCIATION OF HOME
BUILDERS OF THE UNITED STATES,
d/b/a National Association of Home Builders,

    Defendant.

Civil Action No. TDC-20-0454

**MEMORANDUM OPINION**

Plaintiff Melissa Perry has filed this civil action against her former employer, the National Association of Home Builders of the United States ("NAHB"), alleging discriminatory discharge and breach of contract arising out of her September 2018 termination. Pending before the Court is NAHB's Motion to Dismiss. ECF No. 15. Having reviewed the Complaint and briefs on the Motion, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED.

**BACKGROUND**

**I.    NAHB Employment**

Perry worked at NAHB for approximately three years as the Executive Assistant to the Chief Executive Officer ("CEO"), Jerry Howard. NAHB is a Nevada nonprofit corporation and maintains its principal place of business in Washington, D.C., while Perry is a resident of Prince George's County, Maryland. When Perry worked for Howard, he was based at the NAHB office in Washington, D.C. Perry served as Howard's "Point of Contact," which required her to be able to assist "at all hours" due to his regular business trips. Am. Compl. ¶ 10(a), ECF No. 14. Perry

alleges that she conducted "a majority" of her work from her home in Maryland because she was required to work after regular business hours and on weekends, and she estimates that "NAHB derived 70% to 80% of its business" from her support of Howard from Maryland. *Id.* ¶ 3(b). Perry is African American, while Howard, NAHB's entire Board of Directors, and the majority of its employees are white. Perry "always received excellent performance reviews," and her overtime was "always approved" by Howard. *Id.* ¶¶ 9, 10(a).

On or about September 7, 2018, NAHB terminated Perry's employment. Perry alleges that NAHB used the amount of overtime she had accrued, as well as an issue relating to Perry's resume submitted before she was hired, as a pretext for her termination, but that the real reason was race discrimination. She also asserts that she had a contract with NAHB, executed on May 1, 2015, which NAHB breached by terminating her in violation of NAHB's non-discrimination policy and by failing to provide Perry with the option to enter into and to follow a "Performance Improvement Plan" before she was terminated. *Id.* ¶ 12.

**II.     Procedural History**

On July 18, 2019, Perry filed a Complaint against NAHB in the Circuit Court for Prince George's County, Maryland in which she asserted two causes of action: (1) race discrimination in violation of the Maryland Fair Employment Practices Act ("FEPA"), Md. Code Ann., State Gov't §§ 20-602 to -611 (LexisNexis 2014), for which she sought $60,000 in damages and attorney's fees under the statute; and (2) breach of contract, for which she sought $10,000 in damages and attorney's fees. NAHB removed the case to this Court on the basis of diversity jurisdiction. *See* 28 U.S.C. § 1332 (2018). In its Notice of Removal, NAHB asserted that the amount in controversy exceeded $75,000 once the requested attorney's fees were included. At a case management conference on May 15, 2020, Perry's counsel affirmed that the amount in controversy exceeded

$75,000.  On June 5, 2020, Perry filed an Amended Complaint with this Court that seeks total damages of only $45,000, as well as attorney's fees.

## DISCUSSION

In its Motion to Dismiss, NAHB asserts several grounds for dismissal.  First, NAHB argues that this Court lacks personal jurisdiction over NAHB because the exercise of personal jurisdiction does not comply with the Maryland long-arm statute and would not comport with due process.  Second, NAHB argues that Perry's FEPA claim must be dismissed because it does not apply to NAHB, which is based in Washington, D.C., and, even if it did, Perry has failed to allege sufficient facts to support an inference that race discrimination factored into her termination.  Third, NAHB seeks dismissal of the breach of contract claim because there was no contract between the parties.  Perry opposes the Motion and seeks remand on the basis that this Court lacks jurisdiction because the amount in controversy, which is identified in the Amended Complaint as $45,000 plus attorney's fees, does not exceed $75,000.

**I.    Subject Matter Jurisdiction**

Because Perry's argument relating to the amount in controversy raises an issue of subject matter jurisdiction, the Court will address it first.  A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).  As relevant here, a defendant may remove a state court case only when it meets the requirements of either (1) diversity jurisdiction or (2) federal question jurisdiction.  *See Lontz v. Tharp*, 413 F.3d 435, 439 (4th Cir. 2005).  "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).

NAHB removed this case to this Court on the basis of diversity jurisdiction, which exists where "the matter in controversy exceeds the sum or value of $75,000" and is between citizens of different states.  28 U.S.C. § 1332(a).  Attorney's fees may be considered as a part of the matter in controversy when they are recoverable by statute or contract.  *See Francis v. Allstate Ins. Co.*, 709 F.3d 362, 368 (4th Cir. 2013); *Momin v. Maggiemoo's Int'l, L.L.C.*, 205 F. Supp. 2d 506, 509 (D. Md. 2002); *see also* 14A Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 3712 (4th ed. 2020).

At the time of removal, all requirements for diversity jurisdiction were satisfied.  There is no dispute that the parties were and are diverse, as NAHB is a Nevada corporation and maintains its principal place of business in Washington, D.C., while Perry is a citizen of Maryland.  *See* 28 U.S.C. § 1332(c).  As for the amount in controversy,  Perry's state court complaint sought $70,000 in damages, including $60,000 and "reasonable Attorney's Fees" based on alleged race discrimination in violation of FEPA.  Compl. ¶¶ 13, 21(A) (citing Md. Code Ann., State Gov't § 20-602).  On claims asserted under FEPA, a "court may award the prevailing party reasonable attorney's fees, expert witness fees, and costs."  Md. Code Ann., State Gov't § 20-1015.  At the May 15, 2020 case management conference, the parties agreed that FEPA attorney's fees could be considered and that the amount in controversy therefore exceeded $75,000 at the time of removal.

Perry's argument for remand thus relies on the claim that the Court now lacks subject matter jurisdiction because her Amended Complaint seeks only $45,000 plus attorney's fees. Diversity jurisdiction, however, is fixed at the time of removal.  *Dennison v. Carolina Payday Loans, Inc.*, 549 F.3d 941, 943 (4th Cir. 2008).  It is "black letter law" that "the conditions that create diversity jurisdiction . . . need *not* survive through the life of the litigation," and that "a court determines the existence of diversity jurisdiction at the time the action is filed, regardless of later

changes," including to "the amount in controversy." *Porsche Cars N. Am., Inc. v. Porsche.net*, 302 F.3d 248, 255-56 (4th Cir. 2002). Because this Court had subject matter jurisdiction at the time of removal, it retains that jurisdiction now regardless of the revised damages demand in the Amended Complaint. Perry's request for remand therefore fails.

## II.     Personal Jurisdiction

NAHB seeks dismissal for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) on the grounds that its conduct does not implicate the Maryland long-arm statute, and it lacks minimum contacts with Maryland for the exercise of jurisdiction to comport with the due process requirements of the Fourteenth Amendment to the United States Constitution.

### A.     Legal Standards

Under Rule 12(b)(2), the plaintiff has the burden to establish personal jurisdiction. *See Mylan Labs. Inc. v. Akzo, N.V.*, 2 F.3d 56, 59–60 (4th Cir.1993). To carry that burden at the pleading stage, the plaintiff need only make a *prima facie* showing that the defendant is properly subject to this Court's jurisdiction. *Id.* at 60. In evaluating the plaintiff's showing, this Court must accept the plaintiff's allegations as true and must resolve any factual conflicts in the plaintiff's favor. *Id.* at 60.

For a district court to assert personal jurisdiction over a nonresident defendant, the exercise of jurisdiction (1) "must be authorized under the state's long-arm statute"; and (2) "must comport with the due process requirements of the Fourteenth Amendment." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). In this instance, the Court need not assess authorization under the Maryland long-arm statute because, as discussed below, it finds that an exercise of personal jurisdiction would not comport with due process requirements.

A court may exert personal jurisdiction over a nonresident defendant in keeping with due process if the defendant has "certain minimum contacts" with the forum state, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457 (1940)). Determining whether a defendant has such contacts is a fact-specific undertaking. *Kulko v. Superior Court of Cal.*, 436 U.S. 84, 92 (1978).

Courts distinguish between two types of personal jurisdiction: general and specific. A court has general personal jurisdiction over out-of-state defendants whose "affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). For a corporate defendant, general jurisdiction typically exists in the state in which it was incorporated or in which its principal place of business is located. *Id.* In an "exceptional case," a corporate defendant's operations in the forum state may be so "substantial" "as to render it" subject to general jurisdiction there. *Id.* (quoting *Daimler AG*, 571 U.S. at 139 n.19).

A court has specific personal jurisdiction when the defendant has "'purposefully established minimum contacts in the forum State' such 'that [it] should reasonably anticipate being haled into court there.'" *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). In assessing whether specific jurisdiction exists, the court must consider "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Id.* at 189 (quoting *ALS Scan, Inc. v.*

*Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir.2002)). A plaintiff must prevail on each prong. *Id.*

### B. Due Process

In her Amended Complaint, Perry alleges that the following facts support a finding of personal jurisdiction over NAHB: (1) Perry conducted "a majority" "of her employment duties at her home" in Maryland, and "NAHB derived a substantial portion of its business" from her work there because she was the CEO's administrative assistant; (2) NAHB "conducted business" in Maryland because Perry "performed significant work duties" there; (3) NAHB "caused tortious injury" in Maryland by "wrongfully terminating" Perry; (4) the website of the Maryland Home Builder Registration Unit ("MHBRU") states that NAHB standards may be used in a Maryland homebuilding contract; and (5) NAHB held a conference in Baltimore, Maryland during four days in July 2019. Am. Compl. ¶ 3.

These contacts are insufficient to satisfy due process. General jurisdiction does not exist because it is undisputed that NAHB is a Nevada corporation and maintains its principal place of business in Washington, D.C., and the handful of Maryland contacts alleged by Perry do not suggest that NAHB's operations are so significant as to present an "exceptional case." *BNSF Ry. Co.*, 137 S. Ct. at 1558. Perry does not argue otherwise.

As for specific jurisdiction, Perry has failed to identify NAHB contacts with Maryland that both relate to her claims and establish purposeful availment. *See Perdue Foods LLC*, 814 F.3d at 189. Perry's argument for personal jurisdiction over NAHB in Maryland primarily relies on her allegations that she conducted the majority of her work from her home in Maryland, that as a result NAHB should be deemed to have conducted business in Maryland and derived "a substantial portion of its business" from her work there, and that NAHB wrongfully terminated Perry. Opp'n

7

Mot. Dismiss at 2-3, ECF No. 16.  Purposeful availment, however, focuses on contacts that the Defendant purposefully initiated to target the forum state, not unilateral contacts by the plaintiff. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[U]nilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State."); *see also Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."); *Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 452 (4th Cir. 2000).

In addressing whether a court may exercise specific jurisdiction over a nonresident employer in a dispute involving remote work by an employee in the forum state, courts may find purposeful availment where the employer intentionally directed contact with the forum state, such as through some combination of affirmatively recruiting the employee while a resident of the forum state, contracting to have the employee work from the forum state, having the employee attend meetings with business prospects within the forum state, and supplying the employee with equipment to do work there.  *See Cossart v. United Excel Corp.*, 804 F.3d 13, 16-17, 21 (1st Cir. 2015) (finding purposeful availment where a Kansas defendant employer recruited a Massachusetts resident to conduct sales work in Massachusetts on its behalf, formalized the arrangement in a contract stating that the work would occur in Massachusetts, and facilitated the work by providing office equipment for use in Massachusetts and registering a sales office with the Massachusetts government); *Hall v. Rag-O-Rama, LLC*, 359 F. Supp. 3d 499, 510 (E.D. Ky. 2019) (finding purposeful availment where an employer "aggressively sought out" the plaintiff in Kentucky to work for the company, entered into a contract with her to work from Kentucky, and provided her with computer equipment to do so); *Winner v. Tryko Partners*, LLC, 333 F. Supp. 3d

250, 256, 264 (W.D.N.Y. 2018) (finding personal jurisdiction where a New Jersey defendant company employed the plaintiff to "provide marketing services" from her home in New York, expressly agreed to her continuing to live and work in New York, and enlisted the plaintiff to attend multiple meetings with vendors in New York); *Stuart v. Churn LLC*, No. 1:19-CV-369, 2019 WL 2342354, at *5 (M.D.N.C. June 3, 2019) (finding purposeful availment where the New York defendant employer hired the plaintiff with the understanding that he would work out of his home in North Carolina, provided him an allowance to support office expenses there, and knew that he was working to expand the company's business in North Carolina and was meeting with potential distributors there).

In remote-work cases, however, a defendant's mere knowledge that an employee happens to reside in the forum state and conduct some work from home does not constitute purposeful availment. For example, in *Fields v. Sickle Cell Disease Association of America, Inc.*, 376 F. Supp. 3d 647 (E.D.N.C. 2018), *aff'd*, 770 F. App'x 77 (4th Cir. 2019), a North Carolina resident entered into an employment contract with a Maryland employer that did not specify the location of work, but the employee agreed to the offer of employment only on the condition that she could telecommute from North Carolina; the employer subsequently engaged in business activities with her while she was in North Carolina; and it provided her with support to perform that work. *Id.* at 650, 652-53. Under these circumstances, the court found that the plaintiff's decision to work remotely from North Carolina was a "unilateral decision" that the foreign Maryland defendant employer merely "accommodated" and thus dismissed for lack of personal jurisdiction. *Id.* at 653.

Other courts have found a lack of purposeful availment under similar circumstances. *See, e.g.*, *Callahan v. Wisdom*, No. 3:19-CV-00350, 2020 WL 2061882, at *12 (D. Conn. Apr. 29, 2020) (finding no purposeful availment where the defendant engaged the plaintiff as a consultant,

and the plaintiff's location in Connecticut, though known to the defendant, was "purely incidental" to the work of the defendant company); *Bertolini-Mier v. Upper Valley Neurology Neurosurgery, P.C.*, No. 5:16-CV-35, 2017 WL 4081901, at *2, *5 (D. Vt. Sept. 13, 2017) (finding no purposeful availment where a New Hampshire defendant employer's "knowledge and facilitation of occasional remote work" by radiologists who worked in New Hampshire but resided in Vermont was an "accommodation," "not a purposeful effort" to have work conducted in the forum state). Thus, when a defendant has not sought to have work conducted in a particular state, the fact that a single employee chooses to conduct remote work from that state may be fairly characterized as sufficiently "random," "fortuitous," or "attenuated" that it does not support the conclusion that the defendant "should reasonably anticipate being haled into court" in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 486 (1985).

Here, Perry's allegations relating to her employment arrangement with NAHB do not demonstrate that NAHB purposefully availed itself of the privilege of doing business in Maryland. Although Perry worked at the NAHB office in Washington, D.C., she alleges that she conducted the "majority" of her work at night and on weekends from her home in Maryland, and that as a result, NAHB both conducted business in Maryland and derived a substantial portion of its business from her work in Maryland. Am. Compl. ¶ 3(b). Even if true, these allegations do not establish purposeful availment. Perry has not alleged that NAHB recruited her for her job because she resided in Maryland, or even with knowledge of that fact. She has not alleged that she executed an employment contract in Maryland, that any such contract provided that she would work from Maryland, or that she was directed to, or actually did, conduct any work targeting Maryland, such as attending business meetings in Maryland. Under these circumstances, Perry's decision to conduct most of her work from Maryland, even if known to and supported in some way by NAHB,

10

constitutes "unilateral activity" that does not establish purposeful availment by NAHB. *See, e.g*, *Fields*, 376 F. Supp. 3d at 652-53. This remains true even if, as suggested by the Amended Complaint, NAHB personnel engaged with her on work matters while she was in Maryland. *See id.* at 652.

As for Perry's reference to the fact that NAHB caused tortious injury in Maryland by "wrongfully terminating" her, that assertion likewise does not establish purposeful availment. Am. Compl. ¶ 3. Perry does not contest that the termination meeting itself occurred in Washington, D.C. and thus does not show that NAHB purposefully availed itself of the benefits of doing business in Maryland by terminating Perry.

For the remaining alleged contacts with Maryland, the July 2019 NAHB conference in Baltimore, Maryland and the reference to NAHB standards on the MHBRU website, Perry has not alleged any connection to the subject matter of her Complaint. The claim that NAHB held a conference in Maryland in July 2019 is unrelated to Perry's claim because she has acknowledged that NAHB ended her employment "on or about September 7, 2018," almost one year before the conference. Am. Compl. ¶ 5. Likewise, there is no claim that the reference to NAHB standards on the MHBRU website, which is operated by the State of Maryland, not NAHB, relates in any way to Perry's work or termination. In any event, the Maryland state government's choice to allow private parties to use NAHB guidelines and to publish this fact online does not demonstrate that NAHB purposefully targeted Maryland for business. Because these contacts are entirely unrelated to Perry's work or termination, they do not provide a basis to support specific jurisdiction over Perry's claims. *See Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 140-41, 143 (4th Cir. 2020) (finding no specific jurisdiction where the plaintiff's claims were unrelated to the defendant's targeted contacts with the forum state).

Because Perry has not alleged NAHB contacts with Maryland that are related to her claims and demonstrate purposeful availment, the Court need not address whether the third requirement for specific jurisdiction, constitutional reasonableness, has been satisfied.  *See Perdue Foods LLC*, 814 F.3d at 189.  As Perry's asserted contacts are insufficient to support personal jurisdiction, the Court will grant the Motion.  Where the Court lacks jurisdiction, it need not and should not address NAHB's remaining arguments for dismissal.

## CONCLUSION

For the foregoing reasons, NABHUS's Motion to Dismiss will be GRANTED.  Within seven days of the date of the accompanying Order, Perry may request that this case be transferred to the United States District Court for the District of Columbia.


Date:  September 28, 2020                           /s/ *Theodore D. Chuang*
                                                    THEODORE D. CHUANG
                                                    United States District Judge